[No. 27938. Department Two. August 26, 1940.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE F. BARTON, *Appellant.*[1]

[1]Reported in 105 P. (2d) 63.

*Hugh Miracle* and *Carl B. Luckerath,* for appellant.

*B. Gray Warner, Leo W. Stewart,* and *Patrick M. Tammany,* for respondent.

DRIVER, J.—By information, George F. Barton was accused of murder in the first degree, in that he did, while

" . . . engaged in committing, attempting to commit or in withdrawing from the scene of the commission of a felony, to-wit: Robbery, wilfully, unlawfully and feloniously . . . beat, touch, strike and wound one Henry Dorsten, a human being, with an iron water pipe . . . thereby mortally wounding the said Henry Dorsten, from which said wounds the said Henry Dorsten languished and died . . . "

The information was based upon Rem. Rev. Stat., § 2392 [P. C. § 8997], the pertinent parts of which are as follows:

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either—

"1. With a premeditated design to effect the death of the person killed, or of another; or, . . .

"3. Without design to effect death, by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a robbery, rape, burglary, larceny or arson in the first degree; . . . "

The trial resulted in a verdict of acquittal.

Thereafter, in the case at bar, George F. Barton was charged with the crime of robbery by an information in which it was alleged that the defendant,

"  .   .   . by force and violence to the person of one Henry Dorsten and by putting said Henry Dorsten in fear of injury to his person and against his will, did then and there take from the presence of Henry Dorsten certain personal property of value to-wit: money, .   .   ."

Both informations referred to the same robbery of Henry Dorsten and to the same acts of the defendant in connection therewith.

The defendant entered, in writing, a plea of not guilty, joined with a special plea of former acquittal. The special plea alleged, in substance, that defendant had been accused of murder in the first degree in the prior case, had been acquitted, and that such acquittal was a final judicial determination and *res judicata* as to all matters and facts set forth in the information in the case at bar; that the defendant had not tendered any issue in the former prosecution regarding the death of Henry Dorsten as the result of an assault upon him, as stated in the information, the sole defense presented and decided being that the defendant was not present at the time and place of the crime, namely, the defense of alibi, and that, therefore, the fact that defendant was not so present and did not participate in any assault upon Henry Dorsten was *res judicata;* and that, by the verdict and judgment in the prior prosecution, defendant was, in effect, acquitted of the same offense of which he is accused in the present case.

The state's demurrer to the special plea was sustained. Defendant then, with leave of court, filed an amended special plea, which differed from the former plea only in alleging in greater detail the facts

claimed to be *res judicata*. An "oral demurrer" to the amended special plea, read into the record at the beginning of the trial, was likewise sustained. The trial then proceeded on the plea of not guilty, and from the resulting verdict and judgment of conviction, defendant has taken this appeal.

Appellant's principal assignments of error relate to the sustaining of the demurrer to his special plea of former acquittal. He cites the following constitutional and statutory provisions:

"No person shall . . . be twice put in jeopardy for the same offense." Const., Art. 1, § 9.

"When the defendant has been convicted or acquitted upon an indictment or information of an offense consisting of different degrees, the conviction or acquittal shall be a bar to another indictment or information for the offense charged in the former, or for any lower degree of that offense, or for an offense necessarily included therein." Rem. Rev. Stat., § 2166 [P. C. § 9382].

Appellant contends that the offense of murder in the first degree, as charged in the information in the prior case, necessarily includes the offense of robbery; and that, therefore, his acquittal in that case operates as a bar to the information in the present case.

A person is not put in second jeopardy by successive trials unless they involve not only the *same act,* but also the *same offense.* There must be substantial identity of the offenses charged in the prior and in the subsequent prosecutions both in fact and in law. The same act may be in violation of two different penal statutes, in which case there may be two separate and successive prosecutions against the offender, because the offenses are not the same. The rule thus stated, which prevails in most jurisdictions, has been adopted by this court.

*State v. Reiff,* 14 Wash. 664, 45 Pac. 318; *State v.*

*Peck,* 146 Wash. 101, 261 Pac. 779; *State v. Kingsbury,* 147 Wash. 426, 266 Pac. 174; *State v. Danhof,* 161 Wash. 441, 297 Pac. 195.

The rule is, however, subject to the qualification that the offenses involved in the former and in the latter trials need not be identical as entities and by legal name. It is sufficient to constitute second jeopardy if one is necessarily included within the other, and in the prosecution for the greater offense, the defendant could have been convicted of the lesser offense. 15 Am. Jur. 54, § 380; 16 C. J. 271, § 449.

Remington's Revised Statutes, § 2166, *supra,* upon which appellant relies, is essentially only a statutory declaration of this qualification of the general rule.

Applying these principles to the case at bar, the appellant has not, necessarily, been twice placed in jeopardy because the murder prosecution and the instant prosecution for robbery were both based upon his same acts and transactions. Also, it is apparent that the crimes of murder and robbery are not substantially identical. This leaves for determination, as to second jeopardy, the sole question of whether or not the crime of murder in the first degree, as defined in Rem. Rev. Stat., § 2392, subd. 3, *supra,* necessarily includes the crime of robbery.

The statute in question defines murder in the first degree, prescribing four different ways in which it may be committed. The first way is "with a premeditated design to effect the death of the person killed, or of another"; the third way requires no premeditated design if the killing is done under certain circumstances pertaining to a robbery or other specified felony. The requisite circumstantial connection between the killing and the robbery, or other felony, takes the place of the premeditated design in determining the degree of the homicide.

The victim of the robbery need not be the same person as the victim of the homicide, and the robbery may be committed in one jurisdiction and the killing take place in another, the only connection between them being the circumstance of the defendant's flight from the place of the one to the scene of the other. See *State v. Ryan*, 192 Wash. 160, 73 P. (2d) 735. The robbery is not necessarily directly included as an integral part of the murder, but is only incidentally related thereto.

In *State v. Ryan, supra*, the defendant was charged with murder in the first degree while engaged "in the commission of a larceny and while engaged in withdrawing from the scene of a robbery and a burglary," and this court, holding that it was not necessary to set out in the information the facts in connection with the commission of the related felonies, said:

"As to the information, the appellant says that it is defective because it did not set out therein the elements of larceny, robbery and burglary. But this was not necessary. The charge of withdrawing from the scene of a robbery and burglary was incidental to the primary charge of murder in the first degree, and such incidental matters need not be set out."

It has been held by this court that an information which accuses a defendant of the killing of a human being with a premeditated design to effect death and while engaged in the commission of a robbery, is not duplicitous, because it charges but one crime, murder in the first degree; and the reference to the robbery is only incidental to, and descriptive of, such crime. *State v. Fillpot*, 51 Wash. 223, 98 Pac. 659; *State v. Miller*, 164 Wash. 441, 2 P. (2d) 738; *State v. Hall*, 185 Wash. 685, 56 P. (2d) 715.

In the former prosecution, appellant was charged only with the crime of murder in the first degree, and

the crime of robbery was not necessarily included therein. The appellant has not, therefore, been twice placed in jeopardy.

Authorities from other jurisdictions are not entirely in accord, but the following support this conclusion: *Warren v. State*, 79 Neb. 526, 113 N. W. 143; *State v. Moore*, 326 Mo. 1199, 33 S. W. (2d) 905; *State v. Elder*, 65 Ind. 282, 32 Am. Rep. 69; *Duvall v. State*, 111 Ohio St. 657, 146 N. E. 90.

The authorities cited by appellant are not applicable, as none of them involve the particular question of included offenses presented in the instant case.

▇ Appellant also contends that his special plea states facts sufficient to constitute a defense under the principle of *res judicata*.

The doctrine of *res judicata*, as distinguished from second jeopardy, does, as appellant asserts, apply to criminal actions as well as to civil causes; but it is subject to the same limitations. One such limitation is stated in 34 C. J. 969, § 1386, as follows:

"The rule as to the conclusiveness of a judgment in a criminal case is subject to the same exceptions and limitations as those which pertain to judgments in civil actions. Thus the conclusive character of the judgment or sentence extends only to the precise issues which were tried and determined, *or to facts without the existence and proof or admission of which it could not have been rendered.*" (Italics ours.)

See, also, 2 Freeman on Judgments (5th ed.), 1364, § 648.

▇ In the murder prosecution, the appellant's defense of alibi and the various related matters of fact set out in detail in his amended special plea were not actually or necessarily adjudicated, nor can it be said that the issues were limited, as appellant contends. Every material allegation of the information was placed in issue by the appellant's plea of not guilty, and the state

had the burden of proof beyond reasonable doubt. It is not possible to determine whether the jurors returned a verdict of acquittal because they credited the testimony in support of appellant's alibi, or for the reason that they found the state's evidence insufficient as to one or more essential elements of the offense charged. They could have utterly disregarded all of the testimony adduced by the appellant in his defense and yet have returned a verdict of not guilty. The verdict and the judgment based thereon were not, therefore, *res judicata* as to appellant's alibi, nor as to any other particular fact. They were *res judicata* only as to the ultimate fact that appellant was not guilty of the crime of which he was accused. *Burlen v. Shannon,* 99 Mass. 200, 96 Am. Dec. 733; *People v. Rogers,* 102 Misc. 437, 170 N. Y. Supp. 86, *affirmed,* 226 N. Y. 671, 123 N. E. 882; *Duvall v. State,* 111 Ohio St. 657, 146 N. E. 90, *supra; State v. Coblentz,* 169 Md. 159, 180 Atl. 266, 185 Atl. 350.

Appellant maintains that the trial court erred in entertaining the demurrer to his special plea, because there is no provision nor authority in law for a demurrer by the state in a criminal case. He cites Rem. Rev. Stat., § 2022 [P. C. § 9266], which is as follows:

"All the forms of pleading in criminal actions heretofore existing are abolished; and hereafter, the forms of pleading, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed herein."

Appellant then argues that this statute, considered in connection with the following language of Rem. Rev. Stat., § 2050-1 [P. C. § 9258-1], strictly limits the state in its pleadings to the indictment, information, or complaint:

"No pleading other than an indictment, information or complaint shall be required on the part of the state

in any criminal proceedings in any court of the state,
. . ."

The former statute was designed to simplify pleadings in criminal actions by discarding "the ancient forms and technicalities of the common law." *State v. Day,* 4 Wash. 104, 29 Pac. 984. The latter statute, by its plain terms, does not limit the state to the pleadings enumerated, but recites only that no other pleadings "shall be *required*" of the state. (Italics ours.)

The following language of Rem. Rev. Stat., § 2054 [P. C. § 9267], seems to indicate that other pleadings on the part of the state are contemplated: "The *first* pleading on the part of the state is the indictment or information." (Italics ours.)

In the interest of orderly procedure, it is essential that the state have some method of testing the sufficiency of a defendant's special plea as a matter of law. The customary and appropriate method is by demurrer.

No case has been cited in which this court has passed upon this precise question. *State v. Lewis,* 31 Wash. 75, 71 Pac. 778, upon which appellant relies, holds merely that, in the absence of a statute expressly providing for a reply by the state to a defendant's special plea of former acquittal, none will be required. On the other hand, in *State v. Whitehouse,* 123 Wash. 461, 212 Pac. 1043, and *State v. Taylor,* 185 Wash. 198, 52 P. (2d) 1252, the right of the state to demur to a special plea of former acquittal, while not disputed, was tacitly recognized and approved.

Appellant next claims that certain special rules of the King County superior court were violated in setting his case for trial before it was at issue, and in reference to the hearing on the demurrer to his amended special plea. This he assigns as error.

This court held, in *Washington Bank of Walla Walla v. Horn,* 24 Wash. 299, 64 Pac. 534, that a superior

court may, for good reason, relax or suspend its own special rules of procedure; and, in *Sylvester v. Olson,* 63 Wash. 285, 115 Pac. 175, and *State v. O'Brien,* 66 Wash. 219, 119 Pac. 609, that requirement of observance of such rules lies in the discretion of the trial court.

Appellant's special plea and amended special plea tendered identical questions of law, which were considered and decided on two separate occasions by two different judges of the lower court after full opportunity had been given for argument in each instance. When the case came on for trial, appellant indicated that he was ready by making no motion for continuance. His contention that he has been prejudiced by violation of special rules of court is without merit.

At the trial of the case at bar, a physician, called as a witness for the state, was handed a piece of iron pipe and a photograph of a human hand. After examining them, he was permitted to testify that, in his opinion, injuries in the form of scratches on the hand, shown in the photograph, could have been caused by holding the bar in the hand and using it as a bludgeon to strike some other object. Before giving this testimony, the witness grasped the bar in his own hand and thereafter examined his hand with a magnifying glass. Appellant contends the court erred in permitting this testimony to stand, because it did not call for any specialized or professional knowledge on the part of the witness, but was based upon a demonstration which could be made by a layman as well as a physician.

While the witness did, at first, testify that he arrived at his conclusion by trying out the instrument on his own palm, subsequently, in explanation of this testimony, he stated:

"I was of the opinion that this instrument could produce this type of injury, but I wanted to be more certain of it if I possibly could. That is the reason I grabbed this pipe in my hand . . ."

It thus appears that the opinion of the witness was based upon his professional knowledge and skill as a physician. His qualifications as an expert on the subject to which his testimony related are not questioned. The testimony was, therefore, admissible. A competent physician, duly qualified as an expert, may testify that, in his opinion, a particular wound could have been caused by a particular instrument. 2 Wharton's Criminal Evidence (11th ed.), 1759, § 999.

The judgment is affirmed.

BLAKE, C. J., BEALS, STEINERT, and MILLARD, JJ., concur.

